Filed 11/8/23  In re Abraham C. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re ABRAHAM C., a Person Coming Under the Juvenile Court Law. | B328451 (Los Angeles County Super. Ct. No. 18LJJP00277) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ARMANDO C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore. Affirmed.

David M. Yorton, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] Armando C. (Father) appeals from the juvenile court's order terminating parental rights over his son Abraham C. Father contends we must remand the matter for compliance with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; (ICWA)) and California law implementing ICWA. He argues (1) at his first court appearance, the juvenile court did not make the requisite ICWA inquiry; (2) the Los Angeles County Department of Children and Family Services (DCFS) did not provide the juvenile court with return receipts for the ICWA notices it sent to the tribes, or any responses received from the tribes relating to Abraham (as opposed to his half sibling); and (3) the juvenile court did not make a final ICWA finding in Abraham's case. Father does not challenge the order terminating parental rights on grounds other than ICWA compliance.

We reject Father's contention that the matter must be remanded for ICWA compliance. As explained more fully below, the juvenile court's initial inquiry error was harmless in light of DCFS's ICWA inquiry of Father. ICWA notice was not required in this case because there is no reason to know Abraham is an Indian child under section 224.2. And the court did in fact make

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

a final ICWA finding, stating it had no reason to believe ICWA applies in Abraham's case.

## BACKGROUND

I. **DCFS Files These Dependency Proceedings, and the Matter Proceeds for More Than Three-and-a-Half Years Before Father Makes His First Appearance**

In March 2018, DCFS received a general neglect referral regarding Linda C. (Mother) and her two children, Isabella G. (then, five years old) and Abraham C. (then, nearly two years old). During DCFS's investigation of the referral, Mother identified Thomas G. as Isabella's father, and Father as Abraham's father.[2] Mother explained that Father was in prison (where he remained for the duration of these proceedings). Based on its investigation, DCFS sought and obtained a warrant authorizing removal of the children from Mother, and DCFS placed both children in the same foster home.[3]

On May 1, 2018, DCFS filed a dependency petition concerning Isabella and Abraham, with allegations against Mother under section 300, subdivisions (b) and (j). Mother appeared at the detention hearing held the same day. She submitted a Parental Notification of Indian Status form (ICWA-

---

[2] Neither Mother nor Thomas G. is a party to this appeal. Thus, this appeal does not concern Isabella.

[3] We include only the facts germane to Father's contentions on appeal regarding the juvenile court's and DCFS's compliance with ICWA and California law implementing ICWA. The reasons this family came to the attention of DCFS, and the bases for the juvenile court's assumption of jurisdiction over the children, are not pertinent to this appeal, so we do not discuss them herein.

3

020), indicating she had "no Indian ancestry as far as [she] knew." The juvenile court deemed Thomas G. to be Isabella's presumed parent and Father to be Abraham's presumed parent. The court asked Mother if she believed either of them had "American Indian" ancestry, and she responded in the negative. The court found that based on the information before it there was no reason to know that Isabella or Abraham is an Indian child as defined under ICWA. The court made detention findings against the three parents, and the children remained placed in foster care.[4] Father did not appear at the detention hearing.

At the adjudication hearing on July 26, 2018, Mother pleaded no contest to an amended count under section 300, subdivision (b). The juvenile court deferred a further ICWA ruling as to Abraham and ordered DCFS to provide further information. The court set the matter for a disposition hearing. Father was not present at the adjudication hearing. He had signed forms earlier in July requesting counsel and indicating he did not want to be physically present in court at the hearing, but he wanted to participate in the hearing by videoconference or telephone. For reasons not clear from the record, his participation at the hearing was not facilitated.

In advance of the disposition hearing, Father again signed forms requesting counsel, waiving his physical presence, and indicating he wanted to participate by videoconference or telephone. This time, a prison official checked a box on the form indicating the prison could not provide Father "with

---

[4] From here, we will not discuss the proceedings relating to Isabella unless they are pertinent to Abraham's case and the issues before us.

videoconference or telephonic technology that complies with" the California Rules of Court.

At a hearing on January 23, 2019, the juvenile court sustained an additional count against Mother under section 300, subdivision (b) and proceeded with the disposition hearing. Mother was present and Father was not (either physically or virtually). Nor was Father represented by counsel. The court declared Abraham a dependent of the court, removed him from Mother and Father, and ordered him placed under DCFS's supervision. The court ordered reunification services and visitation for Mother, but not Father. Twenty months later, on September 18, 2020, the juvenile court terminated Mother's reunification services and scheduled a section 366.26 permanency planning hearing for Abraham. Father still had not appeared at a hearing in this matter.

On December 20, 2021, at a continued section 366.26 hearing, an attorney made a special appearance on behalf of Father, but was not appointed to represent him. Father participated virtually from his place of incarceration. The juvenile court noted this was Father's first appearance in these dependency proceedings. The court continued the matter at DCFS's request and ordered that the prison make Father available at the next hearing by video or telephone. The court did not make an ICWA inquiry of Father (and there was no discussion regarding ICWA at the hearing).

On March 11, 2022, Father filed a section 388 petition requesting, among other things, that the juvenile court vacate the section 366.26 hearing and set a new adjudication and disposition hearing. He argued his due process rights were violated because the juvenile court did not secure his presence at the adjudication

5

and disposition hearings and appoint counsel to represent him, despite his requests for same made in advance of the hearings. The juvenile court set the section 388 petition for a hearing. Father was present via Webex at the May 3, 2022 hearing on his petition, and he appeared through appointed counsel. The court granted the petition and set Abraham's case for a new disposition hearing.

## II. ICWA Inquiries, Notices, and Findings

On May 9, 2022, a relative information form was filed on Father's behalf, listing names and contact information for Abraham's paternal uncle (M.M.), grandmother (G.M.), and half sister (L.G.).

In a Disposition Report regarding Abraham, prepared on or about August 23, 2022, DCFS stated ICWA may apply, listing the Pascua Yaqui and Cherokee tribes. According to the report, on June 7, 2022, Father informed a dependency investigator he "believe[d] he ha[d] Indian Ancestry with the Yaqui Tribe," but he was unsure which side of his family had such ancestry. He provided a telephone number for his sister, L.M., and told the investigator she would be able to provide additional information. The same day, the investigator spoke with L.M., who stated she believed there was "Indian ancestry . . . on the paternal side of her family," but she did "not have much information regarding her paternal relatives." She explained that she did not "have much contact with her biological father" and her mother was deceased. She provided her/Father's parents' names, but was "not able to provide much more details." She also was unable to identify a tribe and could not confirm Father's statement regarding possible Pascua Yaqui ancestry. She told the investigator she had connected with some relatives "from

6

providing DNA" and would "continue to reach out to her biological family on her father's side." On August 17, 2022, the investigator followed up with L.M., who stated she was in touch with her paternal aunt and would ask if she could provide the aunt's telephone number to the investigator. According to the Disposition Report, however, L.M. provided no additional information.

Next, the investigator interviewed Abraham's paternal uncle M.M. regarding Abraham's possible Native American ancestry. As set forth in the Disposition Report, M.M. believed Father might have Native American ancestry, but he "could not provide the name of a tribe or any additional information that would assist in completing the family tree for ICWA inquiry." Nor did he "know anyone" who would be able to provide additional information.

Finally, the investigator interviewed G.M., Abraham's great-aunt, who is the sister of Father's mother. (Apparently, this is the person listed on Father's relative information form as Abraham's grandmother.) After spending time in foster care, Father was placed in G.M.'s home as a child. G.M. denied Native American ancestry on Father's maternal side of the family, stating that her parents were Mexican; and she was unaware of any Native American ancestry on Father's paternal side of the family. She confirmed that Father's mother is deceased. She was "unable to provide [the investigator] with additional information to complete the family tree for ICWA inquiry."[5]

---

[5] The Disposition Report indicates that the investigator spoke with Father's 19-year-old daughter (Abraham's half sibling) L.G., the other person listed on Father's relative

In an Addendum Report, prepared in advance of the August 31, 2022 disposition hearing regarding Abraham, DCFS stated that on July 15, 2022, the dependency investigator sent a letter to Father requesting further information about his possible Native American ancestry. The letter, which DCFS attached to the report, states:

"[DCFS] would like to ask questions regarding your family having any possible Native American Heritage. Could you please use the enclosed self-addressed stamped envelope and notebook paper to write down any relative's names and contact information that would be able to answer the following questions and send it to me? Thank you.

"1. Are you or any family members registered with an Indian Tribe?

"2. Have you or any family members resided on an Indian Reservation?

"3. Have you or any family members received services from a Tribe such as medical, dental or other services[?]

"4. Have you or any family members attended school on a Reservation?

"5. Do you or any family members receive monetary benefits from a Tribe?

"6. Do you or any family members have Native American heritage?" As set forth in the Addendum Report, Father did not respond to the letter.

---

information form. The discussion centered on potential placement for Abraham, and there is no indication that the investigator asked L.G. about possible Native American ancestry. Father does not contend this constitutes ICWA inquiry error.

8

The Addendum Report further states that the investigator spoke with Abraham's maternal grandmother (Mother's mother), who stated that Abraham's maternal great-grandmother was "half Cherokee." The maternal grandmother reported that none of her family members, including Abraham's great-grandmother, lived or attended school on a reservation, or received services or monetary compensation from a tribe. She was not aware of any family member, including Abraham's great-grandmother, being registered with a tribe. She did not believe Mother's father had Native American ancestry and reported that he was from Mexico. She provided contact information for Mother's paternal aunt (Abraham's great-aunt), who confirmed when the investigator contacted her that Mother's paternal family did not have Native American ancestry. She explained that Mother's paternal great-grandmother was from Spain and Mother's paternal great-grandfather was from Mexico; and Mother's paternal grandfather lived in Mexico.

On or about August 18, 2022, DCFS sent ICWA notices (form ICWA-030, Notice of Child Custody Proceeding for Indian Child) regarding Abraham, by certified mail with return receipt requested, to the Bureau of Indian Affairs, the Secretary of the Interior, the Pascua Yaqui Tribe, the Cherokee Nation, the Eastern Band of Cherokee, and the United Keetoowah Band of Cherokee. The notices and the certified mail receipts are attached to the Disposition Report referenced above.[6]

---

[6] In this appeal, Father does not contend the ICWA notices were missing information, or were not sent to all potentially applicable tribes, or were defective in any other way.

9

Father was present via Webex at the August 31, 2022 disposition hearing for Abraham, and he was represented by counsel. The juvenile court removed Abraham from Father, granted Father virtual and telephonic visitation, and denied reunification services under section 361.5, subdivision (b)(12) (the parent has been convicted of a violent felony) and subdivision (e)(1) (services would be detrimental to the child due to the parent's incarceration). The court scheduled a section 366.26 permanency planning hearing for Abraham. As reflected in the minute order for the hearing, the court also made an ICWA finding as to Abraham, stating: "DCFS has complied with its statutory obligation under WIC [Welf. & Inst. Code, §] 224.2 & CRC [California Rules of Court, rule] 5.481(a) and based on the inquiry, the court has no reason to believe ICWA applies as to Mother/Father/Minor."

In a Last Minute Information for the Court filed on November 9, 2022, DCFS reported that it had received letters from the Cherokee Nation, the Eastern Band of Cherokee, and the United Keetoowah Band of Cherokee, indicating Isabella (Abraham's half sibling) is not a member of a tribe or band and is not eligible for membership. DCFS attached the letters to the report and requested the juvenile court make an ICWA finding as to Mother, Thomas G., and Isabella. The record before us does not include return receipts or letters from any tribe or band relating to Abraham.[7] DCFS also reported that Isabella and

_____

[7] DCFS attached return receipts to its report filed on November 9, 2022. As the parties point out in their appellate briefing, these return receipts relate to a different case, as they are from the Blackfeet tribe in addition to the Cherokee Nation

Abraham had been in their foster care placement since April 2018, and their foster mother had been identified as the prospective adoptive parent for both children.

At a hearing on December 1, 2022, the juvenile court continued the section 366.26 hearing and stated the following regarding ICWA, in pertinent part: "The court will note that on August 31, 2022, ICWA findings were made with respect to [Father]. The court finds that [DCFS] has complied with section 224.2 and [California Rules of Court, rule] 5.482(a), and based on the totality of the information, including the Last Minute Information that was filed on November 9, 2022, the court has no reason to believe the Indian Child Welfare Act applies as to [Mother] or [Thomas G.]."

In an Addendum Report, filed on March 9, 2023, DCFS summarized its ICWA inquiry and notice (with the events detailed above) and updated the juvenile court with new information. Through a CLEAR public records search, the dependency investigator located Father's mother's brother A.R. (Abraham's paternal great-uncle). A.R. stated there was no Native American ancestry in his family. In the same Addendum Report, DCFS recommended the juvenile court select adoption as the permanent plan for Abraham and Isabella.

On March 13, 2023, the juvenile court proceeded with the section 366.26 hearing. Father was present via Webex from his place of incarceration, and he was represented by counsel. Regarding ICWA, the court stated: "The court made ICWA findings on December 1, 2022. [¶] The court is also considering

_____

and bands, and they list a different juvenile court case number. No one in this case referenced possible ancestry with the Blackfeet tribe.

11

the Addendum Report filed March 9, 2023, and the court finds that [DCFS] has complied with its obligation under section 224.2 and CRC [California Rules of Court, rule] 5.481(a). And based on the totality of the information provided, the court has no reason to believe that the Indian Child Welfare Act applies as to [Mother], [Thomas G.], or [Father], or the minors." The court terminated parental rights of the three parents, finding no exception applied, and selected adoption as the appropriate permanent plan for Abraham and Isabella, with the caregiver designated as the prospective adoptive parent. The court found by clear and convincing evidence that the children were adoptable.

## DISCUSSION

### I. Applicable Law

Under ICWA, an "Indian child" is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

DCFS and the juvenile court "have an affirmative and continuing duty to inquire whether a child" involved in dependency proceedings "is or may be an Indian child." (§ 224.2, subd. (a).) "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and order the parents to complete form ICWA-020 (Parental Notification of Indian Status). (Cal. Rules of Court, rule 5.481(a)(2)(C).) The court

12

shall also "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) Under certain circumstances, as part of its initial inquiry, DCFS is required to seek information about the child's possible Native American ancestry from others, including extended family members. (§ 224.2, subd. (b).)

If the juvenile court or social worker "has reason to believe that an Indian child is involved in a proceeding," based on the initial inquiry described above, the court or social worker "shall make further inquiry regarding the possible Indian status of the child," including, but not limited to: (1) interviewing the parents and extended family members; (2) contacting the BIA and the State Department of Social Services for assistance in identifying and contacting tribes; and (3) contacting tribes and others "that may reasonably be expected to have information regarding the child's membership status or eligibility." (§ 224.2, subd. (e).) There is reason to believe a child is an Indian child if there is information suggesting that either the child or the parent is a member or may be eligible for membership in an Indian tribe. (§ 224.2, subd. (e)(1).) "Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)," which we set forth below. (*Ibid.*)

ICWA notice is required if DCFS or the juvenile court knows or has reason to know a child is an Indian child under any of the circumstances described in section 224.2, subdivision (d). (25 U.S.C. § 1912(a); Welf. & Inst. Code, §§ 224.2, subd. (f) &

13

224.3, subd. (a); Cal. Rules of Court, rule 5.481(b)(1).) Under subdivision (d), "There is reason to know a child involved in a proceeding is an Indian child under any of the following circumstances:

"(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child.

"(2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village.

"(3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child.

"(4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child.

"(5) The court is informed that the child is or has been a ward of a tribal court.

"(6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

## II. Analysis

### A. The Initial Inquiry

Father argues the initial ICWA inquiry of him was inadequate because he "was present at the December 20, 2021 hearing but the juvenile court did not inquire as to potential Native American ancestry." Father is correct that the juvenile court did not comply with section 224.2, subdivision (c), because the court did not inquire whether Father "knows or has reason to

14

know that the child is an Indian child," and the court did not instruct Father to inform the court if he "subsequently receive[d] information that provides reason to know the child is an Indian child." Nor did the court order Father to complete form ICWA-020 (Parental Notification of Indian Status). (Cal. Rules of Court, rule 5.481(a)(2)(C).) This initial inquiry error by the court was harmless in light of DCFS's ICWA inquiry.

As set forth above, DCFS inquired of Father about possible Native American ancestry in his family. Father informed the dependency investigator that he believed he had Native American Ancestry with the "Yaqui Tribe," but he was unsure which side of his family had such ancestry. He told the investigator that his sister L.M. would be able to provide additional information. The investigator contacted L.M., Abraham's paternal uncle M.M., and Abraham's paternal great-aunt who had raised Father. The investigator asked these family members about possible Native American ancestry, and none could confirm Father's belief about Yaqui ancestry or suggest another possible tribal affiliation. The investigator followed up with Father, sending a letter to his place of incarceration asking for contact information for other relatives who could provide additional information about his claim of possible Native American ancestry. Father provided no such information. The investigator conducted a CLEAR public records search to find other relatives and located Abraham's paternal great-uncle A.R., who stated there was no Native American ancestry in his family.

A failure of the duty of inquiry is not prejudicial and does not require a conditional reversal of the order terminating parental rights unless "the record indicates that there was readily obtainable information that was likely to bear

meaningfully upon whether the child is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.) The record shows that the juvenile court's inquiry error was not prejudicial. DCFS made the ICWA inquiry of Father, and he provided information in response, which DCFS pursued. DCFS followed up with Father, asking for additional information, and Father provided no response. Thus, the record indicates Father had no additional information about his possible Native American ancestry that he could have provided to the court. Father does not argue any other inadequacy in the initial ICWA inquiry, other than the juvenile court's failure to make an inquiry at the December 20, 2021 hearing.

## B. ICWA Notice

Father contends the matter must be remanded to the juvenile court because DCFS did not provide the court with return receipts or responses from the tribes (to the extent there were responses from the tribes) to the ICWA notices it sent regarding Abraham. He asserts that without these documents, the ICWA notice was inadequate.

DCFS argues in the respondent's brief that notice to the tribes of the dependency proceedings was not required here because there is no reason to know Abraham is an Indian child under any of the circumstances set forth in section 224.2. subdivision (d), listed above; and reason to know triggers the notice requirement, as set forth in section 224.2, subdivision (f) and section 224.3, subdivision (a). Father did not file a reply brief on appeal, so he did not respond to this argument. In his opening brief, he does not argue there is a reason to know Abraham is an Indian child (or even a reason to believe Abraham is an Indian child under § 224.2, subd. (e)).

16

We need not address the merits of Father's contention that ICWA notice was inadequate because any defect in notice could not have been prejudicial here. Assuming there was a reason to know Abraham is an Indian child based on his maternal grandmother's claim of Cherokee ancestry in her family, and therefore ICWA notice was required, the letters from the Cherokee nation and bands stating half sibling Isabella (Mother's daughter) is not a member of a tribe or band and is not eligible for membership logically compel the same conclusion as to Abraham's status with the Cherokee Nation and bands. As to Father's claim of possible Native American ancestry in his family, DCFS and the juvenile court received no information "suggesting that" Father or Abraham "is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e).) The speculative statements of Father and his relatives did not provide a reason to believe, let alone a reason to know, that Abraham is an Indian child; and Father does not argue otherwise. Because ICWA notice was not required based on Father's claim of Native American ancestry, any defects in notice as to the Pascua Yaqui Tribe "were legally irrelevant." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1084.)

### C.     The Juvenile Court's ICWA Findings

Finally, Father asserts "the juvenile court did not make a final ruling regarding the applicability of ICWA in Abraham's case," and he argues "the matter should be remanded to the juvenile court to make final ICWA findings with respect to Abraham, [Father], and [Mother]."

In his opening brief in this appeal, Father mistakenly states the juvenile court only made an ICWA finding in half sibling Isabella's case, and not in Abraham's case. He references

17

a minute order from the December 1, 2022 hearing, which includes an ICWA finding regarding Mother and Thomas G. Father fails to acknowledge, however, that the court had previously made an ICWA finding in Abraham's case on August 31, 2022, at the disposition hearing Father attended virtually after his successful section 388 petition, and after DCFS made its ICWA inquiry. The minute order from this August 31, 2022 hearing, which relates only to Abraham's case and not Isabella's, states: "DCFS has complied with its statutory obligation under WIC [Welf. & Inst. Code §,] 224.2 & CRC [California Rules of Court, rule] 5.481(a) and based on the inquiry, the court has no reason to believe ICWA applies as to Mother/Father/Minor." The court referenced the August 31, 2022 ICWA finding on the record at the December 1, 2022 hearing Father references, and reiterated its ICWA finding in Abraham's case on the record at the March 13, 2023 hearing when it terminated Father's parental rights. Based on the foregoing, we reject Father's assertion that the matter should be remanded for an ICWA finding in Abraham's case, as the court already made such a finding. Father raises no grounds for disturbing the finding.

### DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.        WEINGART, J.

18